MARTIRIÁN FUNTANÉ, Plaintiff and Appellant, v. JOEL GOLDBERG, Defendant and Appellee.

No. 3589. Argued May 7, 1925.—Decided March 12, 1926.

*C. Domínguez Rubio* for the appellant.  *M. A. Martínez Dávila* for the appellee.

Mr. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Martirián Funtané brought an action for damages against Joel Goldberg. He alleged in his complaint that on June 5, 1924, the defendant, "the owner or representative of an amusement show known as *Coney Island* and consisting of a gyratory star and a merry-go-round," opened the said show to the public; that after paying for that privilege the plaintiff mounted on one of the horses of the merry-go-round and when the merry-go-round was put in motion the horse on which he was mounted "became unfastened from some part of its arrangement, or something that the plaintiff can not state with certainty," and the plaintiff was thrown to the ground, receiving the injuries that caused him the damages which he estimated at one thousand dollars.

In his answer the defendant denied that he was the owner of the show and that its equipment was under his control. He also denied that the facts were as alleged by the plaintiff, and as new matter of opposition to the complaint he alleged that if the plaintiff suffered the fall as alleged it was due "only to his inexperience and to his negligence in attempting to do pirouettes in order to show to the public his agility as a horseman, and that but for the plaintiff's negligence . . . the accident would not have happened."

At the trial evidence was heard on all of the points of the complaint and answer and the court finally rendered judgment dismissing the complaint with the costs on the plaintiff, who thereupon took the present appeal.

As we have seen, the defendant denied that he was the owner of the show and that its equipment was under his control. When called as a witness for the plaintiff he testified as follows:

"My name is Joel Goldberg. I know Mr. Girod. I was in Guayama in the month of June of this year. I went to the mayor's office to pay some fees for a show known as *Coney Island* that was in Guayama. I went to pay for another person, but the *Coney Island* did not belong to me. I am only the manager on a salary. I am the manager or representative because the other man does not know the business and I am instructing him. *Coney Island* consists of different equipments, such as the merry-go-round, the star, games of chance (*picas*) and other apparatuses, and I am the manager of all of them. All of them are under my direction. He pays me fifty dollars weekly.

"Cross-examined by attorney Martínez he replied: The owner of that *Coney Island* is Fritz Warner. When the *Coney Island* was in operation in Guayama he was here in the city. He was there when the apparatuses were in operation. I am as a secretary, as he does not know the business and asks me to help him until he learns a little about it, for he does not know the business very well. This is the first year that he bought the show and I have twelve years of experience; but he was there on that same night.

"Cross-examined by attorney Domínguez he answered: When the apparatuses are to be arranged he sometimes goes alone and sometimes he sends me. When he does not know how he sends me; when he knows he goes himself. I went to the mayor's office to pay for the light because he sent me there; I went to see Mr. Girod because he sent me there."

The defendant then testified as his own witness and explained with more details his negotiations with Warner, exhibiting three documents as follows: A private document with the signatures authenticated before a notary public on March 15, 1924, by which the defendant sold to Fritz Warner a merry-go-round; another private document also authenticated before a notary on March 2, 1924, showing the sale by the defendant to said Warner of a gyrating wave, and a deed executed in Aguadilla on June 2, 1924, before notary

public J. B. García Méndez, ratifying the sales to which the prior documents refer.

Referring to these the trial judge said in his opinion:

"From the evidence examined it appears that on the date of the accident the merry-go-round did not belong to the defendant, but to a Mr. Warner who had bought it from the defendant some time before, and on that ground the dismissal of the complaint was moved for.

"It is alleged by the plaintiff that both the owner and the manager answer for the consequences of the accident and this is true only to a certain extent. The principal is liable for the acts of his employee, but the action can never be brought against the latter who when acting in the name of the former did not assume personal liability but in the name of the principal or of the person for whom he was acting."

In his brief the appellant contends that the court erred in admitting the documentary evidence mentioned and also in failing to comply with the duty imposed upon it by section 75 (it should be section 74) of the Code of Civil Procedure in that it did not decide the case definitely by bringing in Warner as party defendant.

In arguing the first assignment of error the appellant contends that "the defendant in this case was the show represented by its owner or manager" and that the documents admitted in evidence tended only to create confusion.

The complaint begins thus: "Martirián Funtané Cintrón, plaintiff, v. Joel Goldberg, owner or manager of the *Coney Island Amusement Shows*." We have indicated that in the complaint it is alleged that the defendant was the owner or representative of a show known as *Coney Island*. Hence the action does not appear to have been brought against the show, but against the defendant as owner or representative of it. And that being the case, the documents showing positively that the defendant was not the owner of the show were properly admitted.

The effect of the allegation that the plaintiff was

the representative of the show and the evidence introduced; in relation thereto will be considered in connection with the second assignment of error which involves the interpretation of section 74 of our Code of Civil Procedure. It reads in part as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in. . ."

In Pomeroy on Code Remedies it is said:

"As the equitable theory of parties was adopted in the new procedure, we should naturally expect some provision for changing them, either by addition or diminution. In accordance with this expectation, the codes all contain sections prescribing rules more or less elaborate and explicit for the guidance of the courts in this respect. They follow two different types. The one is the mere statement in a statutory form of the doctrine as to bringing in new parties which had long prevailed in courts of equity, and to it is added a provision which permits a summary interpleader to be ordered by the court, upon motion, in certain specified cases, thus avoiding the delay and trouble of a formal interpleader suit. The New York code adopted this type, and it has been followed, sometimes with slight variations, but often with literal exactness, by most of the State codes and practice acts. The other type is entirely different. It discards entirely all the ancient notions; it goes far beyond the concessions made by the equity courts; it creates, under the title 'Intervention,' or 'Intervening,' a new division of the procedure. The fundamental notion is that the person ultimately and really interested in the result of a litigation—the person who will be entitled to the final benefit of the recovery—may at any time, at any stage, intervene and be made a party, so that the whole possible controversy shall be ended in one action and by a single judgment. The States which have adopted this type to its fullest extent are Iowa and California, and their example has been followed in a number of others." Pomeroy's Code Remedies, 404–5.

The author says also on page 411:

"If a complete determination of the controversy cannot be had

without the presence of other parties, the court *must* cause them to be brought in."

Then on page 413 he concludes as follows:

"This peremptory duty does not arise unless the conditions of the statute are fully met, and the court will not order in new parties defendant, against the will of the plaintiff, unless they are actually necessary in the sense already defined. Thus, in an action against the indorsers of a note, the plaintiff will not be compelled to bring in the maker as a co-defendant. Nor is a new party to be ordered in merely for the purpose of settling matters between him and the defendant in which the plaintiff has no interest. The statute will not permit the plaintiff to add a new defendant *without whose presence he could have no recovery* since he would have no cause of action. Such a proceeding would in effect be the commencing a new action, and the statutory provision assumes that in the pending action a right to obtain a recovery is set up as against the original defendants. The plaintiff cannot be allowed, under the color of bringing in additional parties, to commence a new action when he would have failed entirely in the former one because he had not set up a good cause of action."

Although in the division established at the beginning Pomeroy puts California among the States that have adopted the type of greater extent and our Code follows that of California, and although his conclusions that the statute can not be interpreted in the sense of permitting its use for bringing new actions are supported only by New York cases, the opinion seems so logical that it will be accepted as a rule by this court. Nothing to the contrary has been cited or found in the jurisprudence of California in the study that we have made of it. Perhaps it may be well to say also that in the case of *J. Ochoa & Brother* v. *José González Clemente & Co.*, 29 P.R.R. 948, this court held that "When in asserting a cause of action accruing to his principal the agent does not bring the action in the name of the principal as plaintiff, but in his own name, the defect is not one of parties, but of lack of a cause of action, and the complaint is not susceptible of amendment."

■ What liability had the defendant under the complaint and the evidence?

Summarizing the jurisprudence, Cyc. says:

"Where the act of a servant or agent is one which he either actually or presumably knows to be wrong, he is personally responsible. 'He who commits an unlawful act or an act of misfeasance and positive aggressive wrong to another cannot escape liability therefor upon the ground of his being an agent for another.' If, however, he is merely the unconscious instrument of others in committing the injury, he is not personally liable for the consequences, as where a servant or agent receives property from one whom he is entitled to regard as the owner and merely transports it to another. Nor will the servant or agent be responsible to a third party for damages caused by the mere failure properly to perform a duty intrusted to him by the master. The duty is in such case to the master alone." 38 Cyc. 470-71.

Among the cases that support the text is that of *Van Antwerp* v. *Linton*, 89 Hun (N. Y.) 417, 35 N. Y. Suppl. 318 (ratified in 157 N. Y. 716, 53 N. E. 1133), wherein it was held:

"In an action wherein the defendants were appointed a committee of the board of directors of a corporation to put certain grounds in condition for a game of foot ball, and the plaintiff suffered injuries due to the defective construction of the stands, it was held that the negligence constituted non-feasance and did not involve the commission of a legal act in an illegal way and that the defendants were not liable."

Applying those principles to the facts as they result from the allegations and the evidence, it follows that the defendant was not liable; and, if he was not and had no authority to assume the representation of the real person liable, the owner, in the sense that an action brought against him could be considered as brought against the owner, it is evident that the plaintiff never brought before the court a real defendant to whom another necessary party could be joined in order to settle the question involved If the judge had ordered the summoning of Warner, he would have ordered in fact the

bringing of a new suit, and we have seen already that that is not the spirit nor the extent of the statute.

Having reached the foregoing conclusion, the case need not be studied and decided on its merits; and therefore the judgment appealed from should be affirmed for the reason stated.